UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------

ROBERT RELIGA, an individual, and
LIGHT SYSTEM INC., a private
ecclesiastic faith-based organization,
incorporated in Connecticut,

               Plaintiffs

-- against --

ENERGY ENHANCEMENT SYSTEM,
LLC, a Nevada limited liability company,
MICHAEL BERTOLACINI, an individual,
and SANDRA ROSE MICHAEL, an
individual,

               Defendants.

--------------------------------------------------------

CIVIL ACTION
No. 25-cv-02856

COMPLAINT

Jury Trial Demanded

Plaintiffs Robert Religa ("Religa") and Light System Inc. (Light System"), by and through their undersigned counsel, George C. Grasso, of GCGrasso Law, PLLC, hereby file this Complaint for copyright infringement against Defendants Energy Enhancement System, LLC ("EES" or "EESystem"), Michael Bertolacini ("Bertolacini"), and Sandra Rose Michael ("Sandra"), and in support thereof allege as follows, upon knowledge as to themselves and their acts, and as to all other matters upon information and belief:

## I. INTRODUCTION

1.     This case presents a decades-long saga of intellectual property theft involving a revolutionary light therapy technology first created in the 1980s by a visionary software programmer, Plaintiff Robert Religa.

1

2.      The "Synchronicity Engine" - completed by Religa in 1989 and formally copyrighted by him in 2011 - represents groundbreaking computer code that utilizes structured energy patterns, photonic collision, and dynamic linguistic displays to promote holistic wellness. This proprietary technology has been used to deliver a unique type of regimen to people seeking alternative wellness modalities in hundreds of store-front centers worldwide.

3.      Despite Religa's clear ownership and valid copyright registration for Synchronicity, (Registration Number TX0007381843, which is annexed to the end of this Complaint hereto as Exhibit 1), Defendants Sandra Rose Michael and her son Michael Bertolacini, operating through their limited liability company called Energy Enhancement System, have engaged in a systematic and brazen campaign of sleight of hand and misappropriation, generating more than One Hundred Million ($100,000,000.00) Dollars in sales while leaving the true creator, Robert Religa, financially devastated and emotionally crushed.

4.      The factual record reveals a clear pattern: on the one hand Defendants have acknowledged Religa's ownership when it serves their legal or financial interests, while on the other hand they have disingenuously taken credit for the code's creation in their marketing efforts to obtain clients who truly belong to Religa. To this day, Defendants boldly claim on their public website that the technology was "developed over 20 years by Dr. Sandra Rose Michael," even when Sandra is plainly aware her claim is a lie.

5.      Most recently, Defendants have embarked on a calculated campaign to accelerate their exploitation of Religa's technology. From 2021 to 2024, EESystem's revenues skyrocketed from just Twenty-One Thousand ($21,000.00) Dollars in 2021, to nearly One Hundred Million ($100,000,000) Dollara in the ensuing years, while their global footprint during this period exploded from less than twenty (20) centers to an opening of over seven hundred

2

(700) new infringing wellness centers across fifty (50) countries. As of May 2025, Defendants' public website lists hundreds of active centers – including five (5) concentrated in this District – with plans to open hundreds of additional locations within twelve (12) months. This exponential growth, enabled by recklessly selling systems materially identical to Religa's copyrighted code (per forensic analysis), reflects a deliberate strategy to saturate markets and entrench consumer confusion before Religa could secure legal recourse. Defendants' escalating revenues – only Twenty-One Thousand ($21,000.00) Dollars in 2021, but then Twenty-Three Million ($23,000,000.00) Dollars in 2022, Forty-Four Million ($44,000,000.00) Dollars in 2023, and at least Nineteen Million Five Hundred Thousand ($19,500,000.00) Dollars in 2024 – directly correlate to their recent infringement escalation, underscoring the urgency of immediate relief.

6.    Sandra and her son have amassed illicit profits by licensing Religa's stolen technology to unsuspecting buyers through licensing agreements that are—in reality—legally void because they rest entirely on Defendants' fraudulent claim of ownership over Religa's copyrighted source code. Every dollar Defendants have collected through these sham contracts stems from their deliberate misrepresentation of authorship rights, resulting in the terms of these agreements as legally unenforceable.

7.    Defendant Sandra Rose Michael - who lacks any medical credentials but falsely markets herself as a "Dr." and "PhD" – first targeted Religa in the early 1990s, while he suffered poor health, exploiting his vulnerability in order to secure a licensing agreement years later. In August of 2001, she convinced him to license his code to her company "Body of Light" ("BoL"), a predecessor to Defendant EES. The agreement granted Sandra a non-exclusive license to market Synchronicity Engine Version 7 (a DOS-based iteration), and explicitly stated that Religa retained ownership of the technology. But when Religa discovered that Sandra was

3

making unauthorized medical claims - including going rogue to make false assertions about FDA approvals - he rescinded the license on September 2, 2002. Sandra had also ceased royalty payments (offering Religa instead only token gestures like buying him a bag of groceries or allowing him to stay on her couch) while she continued misappropriating his technology for great sums of money. Meanwhile Religa was rendered destitute.

8.      Even though Sandra had tacitly conceded Religa's ownership of the software code through her efforts to enter into the 2001 licensing agreement with him, when the agreement fell apart and Religa made ensuing attempts to defend his ownership, she disingenuously sought to confuse the markets and frustrate his persistence.

9.      In 2004 Religa had an attorney send Sandra a demand to cease-and-desist, which was ignored. When Defendants learned of Religa's efforts to partner with a new distributor, in which he signed a licensing agreement with a third-party named, Chris Kaufmann ("Kaufmann"), in 2011, Defendants threatened Religa with legal action and claimed they would publish a damaging book about him if he didn't drop the agreement. Rather than drop the agreement, later that year Religa registered the copyright for his Synchronicity technology on March 27, 2011, (Registration number TX0007381843), causing Sandra to panic and pursue a new campaign of aggression. Knowing she could not obtain her own copyright for the technology that she was selling and profiting from on the back of Religa's protected code, and desperate for a competing appearance of accreditation for purposes of her marketing to potential clients, she instead ran to file a trademark application in May 2012 for the names, "Energy Enhancement System" and "EESystem," which of course has nothing to do with the technology itself, but was disingenuously intended to perpetuate the misleading false appearance of ownership to unsuspecting or unwitting consumers who failed to scrutinize the details.

4

10.    In August 2012, with her trademark applications still pending, Sandra followed through on her threat of litigation.  Without any standing for a copyright infringement claim, Sandra nevertheless sued Kaufmann in Arizona for trademark infringement and defamation.  The case was finally settled eighteen (18) months later, in 2014, after Kaufmann filed a motion for summary judgment, and at great legal expense to Religa who had felt obligated to assist in Kaufmann's legal fees.  However, the meritless trademark infringement and defamation claims would become Sandra's 'lawfare' *modus operandi*, and one that she again employed recently when she filed a pending lawsuit against Religa in Nevada in January 2025, alleging the same baseless claims she had brought against Kaufmann over a decade earlier.

11.    Sandra's claim of authorship of Religa's code is particularly duplicitous given her past actions and statements. Sandra's contradictory positions crystallized in a December 18, 2012 legal response to one of Religa's cease-and-desist demands, in which her counsel wrote:

> *Receipt is hereby acknowledged of your undated letter to EESystem, LLC ('EESystem') among others, wherein you demand that EESystem 'immediately cease and desist from copying, displaying or otherwise using or affirmatively representing that [it is] the copyright owner of The Synchronicity Engine Technology' as contained in U.S. Copyright Registration No. TX0007381843 (the 'Registration'). Please be advised that contrary to your letter, EESystem does not claim to be the owner of the Synchronicity Engine Technology covered by the Registration. To the contrary, pursuant to a License Agreement dated August 19, 2001 . . . BoL holds a non-exclusive license to use the Synchronicity Engine 7 Technology . . . In fact, the EESystem software was rewritten in approximately 2003 following the termination of the business relationship between Mr. Religa and Dr. Sandra Rose Michael.*

12.    Her attorney's letter disclaimed ownership of the subject technology but purports the spurious claim of "rewrite" thereof.  But Defendants were never authorized to

5

rewrite the code, but even if they were, their purported "rewrites" resulted in code that expert

forensic analysis has determined to be the same as Religa's.

13.     Sandra's own public remarks double-down on her contradictory position

and reveal her propensity for fantastical revisionism. At a March 16, 2023 marketing event for

the infringing technology at the "Rays of Light" center in the town of Port Washington in Long

Island, Sandra told potential clients:

> *So in 1996 when I put together my first full system all of a sudden
> we had . . . lasers and field engine generators. We're colliding
> photons and it creates a cold nuclear fusion. When we did that . . .
> we had the black helicopters over. We had spaceships over us . . .
> NASA showed up at the door because it was the signature of a
> nuclear sub on land . . . 300 men in hazmat suits surrounded us
> because I put the whole country . . . our entire military worldwide
> went on high defcon alert. Oops.*

14.     This narrative – aside from its delusional claims - directly contradicted (1)

Religa's 1989 completion date, (2) Sandra's own 2012 legal concession of Religa's ownership,

and (3) Defendants' initial license agreement from 2001 (which should never have been

necessary if Sandra created the code as she claimed).

15.     Alarmingly, according to information obtained from a former EES

security guard, when Religa then issued his own public letter in 2023 asserting his ownership

rights, Sandra asked her security team if it would be possible to silence him "permanently."

16.     The next year, Religa finally found a viable partner who agreed to assist

him in asserting his ownership over his copyright.  In December 2024, he entered into an

exclusive licensing agreement with Plaintiff Light System, that granted Light System an

exclusive worldwide authority to commercially sell and distribute his software code.  With Light

System, Religa not only secured a trustworthy partner, but found a genuine ally who would provide him the necessary financial backing to vindicate his rights.

17.     Defendants predictably responded to Religa's new partnership with Light System with a three-pronged campaign: flooding markets with unauthorized systems, disseminating misinformation claiming the technology that Light System was using from Religa was both "functionally inferior" and paradoxically "stolen" from Defendants, and threatening Religa and potential Light System partners with aggressive litigation – a threat they quickly put into action by filing a defamation and trademark infringement lawsuit in Nevada against Religa in January 2025 for asserting his ownership over his own copyrighted code.

18.     The recent escalation by Defendants to eviscerate the integrity of Religa's code, his ownership, and its use by Light System, requires immediate injunctive relief. As of May 2025, Defendants' public website lists hundreds of active infringing centers worldwide – including five concentrated in this District – with plans to open hundreds of additional locations within 12 months. Absent court intervention, this expansion will persist unabated, irrevocably distorting markets through saturation of unauthorized systems.

19.     Just a few short days prior to the date of this Complaint, Sandra posted a public video of herself narrating another fallacious tale, this time on her Instagram and Facebook pages, on May 20, 2025, (the same day she learned of Religa's intention to file this lawsuit, through court filings in Nevada), in which, for the first time, she claims to have "built my first scalar healing light chamber in 1978." In keeping with the confounding spirit of disseminating prior false tales, Sandra's recent statement even stands in contrast to all of her own prior false postures projected to consumers.

20.    Defendants continue selling an outdated, unauthorized version of Religa's code (Version 7 from 2001, while legitimate systems now use Version 8.6), damaging the technology's reputation, undermining Light System's exclusive business model, and placing the technology in the hands of those attempting to reverse-engineer it. Without Court intervention, Plaintiffs will suffer irreversible and irreparable damage, and the market will become permanently distorted through consumer confusion engineered by Defendants.

## II. PARTIES

### A. Plaintiffs

21.    Plaintiff Robert Religa is an individual residing in California. Religa is the original author, creator, and registrant of the copyrighted source code at issue in this litigation, having developed it through decades of research and experimentation in technologies designed to catalyze the expansion of consciousness.

22.    The source code that is the subject of this lawsuit, known as the Synchronicity Engine, was a revolutionary invention in the area of alternative health and wellness. Utilizing color, light, constructive electromagnetic fields, photonic collision, and specific sets of linguistics, the technology was created by Religa to help individuals rebalance their body, expand their consciousness, and experience a higher quality of life in all respects. While many private individuals have this technology in their homes, the technology is typically marketed to vendors who have opened wellness centers in this District and around the world, where consumers may visit for wellness sessions providing the exposure to a positive and coherent energetic environment which rests on the code source and technology designed to synchronize the body with said generative environment, and to assist in promoting a better probability of experiencing health over disease.

8

23.     Plaintiff Light System Inc. ("Light System") is a private ecclesiastic faith-based organization incorporated, organized, and existing under the laws of the State of Connecticut. Light System's current Reverend and President, Rev. Marcy Galazan, conducts business operations from her office in Nassau County, New York. Since December 5, 2024, Light System holds an exclusive worldwide license for Religa's code, with explicit permission to commercially and exclusively sell and distribute the technology and intellectual property at issue in this District and across the globe.

**B. Defendants**

24.     Defendant Energy Enhancement System, LLC ("EES") is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada. EES manufactures, markets, distributes, and sells the infringing light-based technology systems nationwide, incorporating unauthorized copies of Plaintiffs' copyrighted source code. The company operates under the name "Energy Enhancement System" or "EESystem" and directly competes with and infringes upon Plaintiffs' authorized products.

25.     Defendant Sandra Rose Michael ("Sandra") is an individual residing in Nevada, and upon information and belief, the founder, owner, and/or managing member of Defendant EES. She exercises direct control over and actively participates in the infringing activities described herein.  Despite lacking medical credentials, she masquerades as a medical doctor and falsely claims to be the inventor of the technology that Religa created and copyrighted.  She has claimed to have held a position of "Minister of Health" for the "Republic of New Lemuria," a made-up country based on a mythical lost continent called 'Lemuria.'

9

26.     Defendant Michael Bertolacini ("Bertolacini") is an individual residing in Nevada and is a principal of Defendant EES.  As CEO of EES and son of Sandra Rose Michael, he maintains direct control over and involvement in the infringing activities described herein.

### III. JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) as this case arises under the Copyright Act of 1976, as amended, 17 U.S.C. Section 101 et seq.; and diversity citizenship jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars and there is complete diversity of citizenship of the parties; and Plaintiffs also invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 for the state law claims.

28.     This Court has personal jurisdiction over Defendants because they have purposefully directed their activities toward the State of New York and this District, and have established minimum contacts such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

29.     Defendants have conducted significant business activities targeting New York residents and entities by marketing, distributing, and selling their products and services that rely on the infringing technology within this District.  These activities include:

    a.  Selling the infringing products to multiple wellness centers featuring the infringing technology within this District, including:

- One Mind One Body Wellness (8918 Avenue L, Brooklyn, NY)
- Stelis Medspa & Energy Healing Center (504 Avenue U, Brooklyn, NY)
- Rays of Light (168 Main Street, Port Washington, Long Island, NY)

10

- Divine Alignment (Smithtown, Long Island, NY)

- Emerge Integrative Wellness (623 Broadway, Massapequa, NY)

b. Actively advertising most of these locations on their public website through a

  "Find a Center" function that displays the locations on a map;

c. Promoting additional planned wellness centers within this District, including a

  "Coming Soon" location for Stelis Medspa & Energy Healing Center at 504

  Avenue U in Brooklyn; and

d. Maintaining a commercial website that is accessible to and accessed by residents of

  this District, including potential customers of Light System.

e. Conducting in-person promotional events within this District, including Sandra

  Rose Michael's March 16, 2023 marketing appearance for EESystem at the "Rays

  of Light" center in Port Washington, Long Island, in which she falsely claimed to

  be the inventor of Religa's source code, and concocted a tale for attendees about

  how she was the creator of "my first system" in 1996 in collaboration with

  NASA.

30.     The effects of Defendants' infringement directly impact Light System's

business operations in this District, where Light System, through its Reverend and President,

Rev. Marcy Galazan, coordinates operations from her office in Long Island and where she has

client and business relationships that are being harmed by Defendants' wrongful and

unauthorized use of the protected technology.

31.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and

1400(a) because a substantial part of the events giving rise to the claims occurred in this District,

Defendants have targeted consumers in this District, made defamatory and infringing statements

11

in this District, conducted business activities within this District, and Defendants' infringing activities have caused harm to Plaintiffs' business interests in this District and beyond.

## IV. <u>FACTUAL ALLEGATIONS</u>

**A. <u>Robert Religa's Creation and Copyright of the Synchronicity Engine</u>**

32.    In the 1980s, Religa began developing the Synchronicity Engine, a technology inspired by Dr. Carl Jung's work on synchronicity. By 1989, he completed the core software and refined it for applications involving dynamic linguistic displays and energy modulation.

33.    Religa devoted thousands of hours to developing this specialized computer source code designed to operate advanced light-based and energy-based technology systems. Through extensive research, experimentation, and development, he created a sophisticated source code that utilizes a complex confluence of color, light, constructive electromagnetic fields, photonic collision, and specific sets of linguistics, in addition to generating specific frequencies through various modalities which have been proven to enhance human consciousness and significantly promote wellness.

34.    Religa's proprietary source code contains unique elements including the MetaMatrix font, a specific combination of colors in each sub-program targeting different aspects of the human body, an intentional scrolling mechanism, and an intentionality function, all of which represent substantial creative expression and technical innovation.

35.    In the early 1990s, Religa met Defendant Sandra Rose Michael at a Conscious Life Expo in Los Angeles and invited her to his home to demonstrate the Synchronicity Engine.

36.     Some years later, on August 19, 2001, Religa granted Sandra a non-exclusive license to market the Synchronicity Engine Version 7 (a DOS-based iteration). According to the contract, Religa retained ownership of the Synchronicity Engine technology.

37.     In 2002, Religa discovered Sandra had falsely advertised the technology as having medical benefits, violating FDA regulations as well as their 2001 license agreement. On September 2, 2002, Religa rescinded the license via written notice to the MetaMatrix International Trust, an entity Sandra had created with an individual named Shawn Jadun ("Jadun").

38.     At that time, Sandra also ceased royalty payments upon her rescission, effectively terminating her rights to use the technology.

39.     In 2004, an attorney for Religa sent a cease-and-desist letter to Sandra demanding that she halt all use of the technology. Sandra ignored this notice.

40.     In an attempt to obfuscate her need to obtain a licensing agreement with Religa like the one she had through her predecessor company, Body of Light, Sandra instead formed a new company, Defendant Energy Enhancement System LLC ("EES"), and began marketing Religa's technology as the "EESystem," and falsely claiming her ownership of it. She would continue to gaslight consumers in claiming that's she had "rewritten" Religa's code to create the EESystem, which was simply the same code as Religa's. However, even if she had rewritten Religa's code, she never had permission to do so from Religa. Either way, the evidence shows that the code was never rewritten.

41.     On September 15, 2010, Sandra's agent, USD Editions Ltd., threatened legal action against Religa if he continued working with distributors, and again, asserting baseless claims of ownership.

13

42.     On October 5, 2010, Religa received another letter, dated September 15, 2010, from USD Editions Ltd, acting on behalf of Sandra, claiming ownership of the technology and threatening to publish a book on Religa if he did not cease his efforts to find other partners with whom to license his code.

43.     On March 27, 2011, Religa registered and obtained the copyright for his Synchronicity technology with the United States Copyright Office under Registration No. TX0007381843.  Exhibit 1.

**B. *The Stolen Code*: Sandra Rose Michael's Exploitation of Religa's Intellectual Property**

44.     When Religa sought to mitigate losses from Sandra's misappropriation of his technology following the breakdown of their licensing agreement, Defendants launched a higher level of aggressive tactics to stop him.  In and around 2011, Religa entered into a marketing agreement with the third-party named Chris Kaufmann ("Kaufmann"), and Sandra commenced meritless litigation against Kaufmann. Kaufmann's licensing rights were cancelled several years after.

45.     In the following years, Defendants systematically exploited Religa's code to illicitly generate revenues now exceeding One Hundred Million ($100,000,000.00) Dollars - a figure conservatively estimated through forensic financial analysis of EES's internal records, obtained from affiliates of EES. Central to this scheme was and still is EES's brazen public narrative, prominently displayed on its website, that "this stunning technology" was "developed over 20 years ago by Dr. Sandra Rose Michael" - a statement contradicting both the fact of Religa's copyright registration and Defendants' own failure to assert any claim of copyright ownership. This fraudulent claim of authorship forms the cornerstone of Defendants' marketing strategy.

14

46. The deception extends to Sandra's credentials. While she now currently holds herself out as a "PhD," investigative research reveals no accredited institution has granted her such a degree, and upon information and belief, she recently engaged in a desperate attempt to have an honorary PhD awarded to her upon begging a professor at Pan American University in Florida for the same – a request that was quickly declined. This pattern of credential fabrication - from fictitious medical degrees to unearned academic honors - underscores Defendants' reliance on deception to legitimize their theft, and mirrors Sandra's earlier fraudulent claims to medical expertise, coalescing to form a pattern of deceit central to Defendants' business model. For instance, in a hearing under oath in 2020, Sandra conceded that she had dropped out of college before ever earning a degree, and was awarded an "honorary PhD and MD license "by the Minister of Health of another country," which was apparently a reference to information on her personal website in which she claims to have worked as the "Minister of Health for the Republic of New Lemuria," a made-up country.

47. Following Religa's repeated reassertion of his ownership rights, Defendants dramatically accelerated their infringing activities since 2021. Between May 2022 and November 2024, EESystem sold unauthorized systems to over Seven Jundred (700) new wellness centers across fifty (50) countries, representing a Three Thousand Eight Hundred (3,800%) Percent increase from their pre-2022 footprint of eighteen (18) centers. This explosive growth generated revenues of: (a) Twenty-Three Million ($23,000,000.00) Dollars in 2022; (b) Forty-Four Million ($44,000,000.00) Dollars in 2023; and (c) at least Nineteen Million Five Hundred Thousand ($19,500,000.00) Dollars in 2024, indicative of a deliberate and calculated strategy by Defendant to wrongfully saturate global markets with their infringing software code.

15

48.    On December 5, 2024, Religa granted Light System a worldwide exclusive license to commercially exploit all past, present, and future iterations of his copyrighted materials, including the right to manufacture, distribute, and sell technology embodying the protected source code – in the hopes that Religa would finally begin to receive credit and royalties for his work.  Finally with Light System's financial backing and through his receipt of duly owed royalties, Religa relishes the opportunity to reassert his ownership of his cherished code by bringing this lawsuit.

49.    In response to Religa's new licensing arrangement with Light System, EES renewed its campaign of spreading misinformation about Religa, and now Light System, all the while, accelerating their infringing activities and selling wherever possible to tactically block Light System from acquiring new clients.

50.    In the beginning of 2025, EES began threatening customers who considered switching to Light System, warning that they would face aggressive litigation if they used Light System's technology (though, ironically, Light System is the only authorized seller and distributor of Religa's software). These threats contained inherently contradictory claims, simultaneously asserting that Light System's technology was both "not the same" yet also "stolen" from EES. Defendants also threatened the center owners who purchased from them that if they were to go against their licensing agreement with EES (which had, and still has, no validity whatsoever), they would bring forth further lawsuits, in this case, against their own customers.  EES has conveniently failed to inform consumers that their licensing agreements are null and void, as they are based on property that does not belong to them, *inter alia*.

51.    Through forensic analysis conducted by an expert team led by Jim Lidestri, Plaintiffs conclusively established that Defendants' systems contain unauthorized

copies of Religa's copyrighted source code. This analysis demonstrates that Defendants did not independently develop their software but instead copied Plaintiffs' protected expression.

52.     In summary, Lidestri's forensic team concluded that, after comparing the source code utilized by EESystem against the code utilized by Light System, (which is the only authorized licensee of Religa's copyrighted technology), it was determined: "Quite simply, these two applications share the same core source code and have the same author."

**D. Defendants' Knowledge of Infringement, Contradictory Admissions, and Escalating Misconduct**

53.     Since the earliest days of their relationship, Defendants have demonstrated a calculated pattern of acknowledging Religa's ownership when it has served their financial or reputational interests, while simultaneously misrepresenting the ownership of the source code to the public and potential clients/consumers. This contradictory and inconsistent behavior provides compelling evidence of Defendants' willful infringement.

54.     In 1992, Religa's attorney, Ms. DeHaan, drafted an agreement affirming his sole ownership of the Synchronicity Engine technology, with Sandra retaining rights only to the specific linguistics they co-developed. This understanding formed the foundation of their business relationship.

55.     On August 19, 2001, Religa granted Sandra a non-exclusive license to market the Synchronicity Engine Version 7 (a DOS-based iteration). The contract explicitly stated that Religa retained ownership of the Synchronicity Engine technology, while Sandra owned only rights to her linguistics.

56.     In 2002, Religa discovered Sandra had falsely advertised the technology as having medical benefits, violating FDA regulations. For that reason, on September 2, 2002,

Religa rescinded the license via written notice to the MetaMatrix International Trust, an entity

Sandra had created with the assistance of an individual named Shawn Jadun.

57.    Sandra ceased royalty payments following this rescission, effectively

acknowledging the termination of her rights to use the technology.  However, she continued

using the technology without authorization (but even if the agreement had never been rescinded,

there can be no dispute that it would have nevertheless expired after all options for renewals had

elapsed, by no later than 2016).

58.    In 2004, Religa's attorney sent a cease-and-desist letter demanding that

Sandra halt all use of the technology. Sandra ignored this notice.

59.    On December 18, 2012, following another cease-and-desist letter from

Religa, Defendants' legal counsel made critical admissions in their written response. EESystem's

lawyers wrote:

> *Receipt is hereby acknowledged of your undated letter to*
> *EESystem, LLC ('EESystem') among others, wherein you demand*
> *that EESystem 'immediately cease and desist from copying,*
> *displaying or otherwise using or affirmatively representing that [it*
> *is] the copyright owner of The Synchronicity Engine Technology'*
> *as contained in U.S. Copyright Registration No. TX0007381843*
> *(the 'Registration'). Please be advised that contrary to your letter,*
> *EESystem does not claim to be the owner of the Synchronicity*
> *Engine Technology covered by the Registration. To the contrary,*
> *pursuant to a License Agreement dated August 19, 2001, by and*
> *between Dr. Sandra Rose Michael, d/b/a Body of Light ('BoL'),*
> *and Robert Religa, BoL holds a non-exclusive license to use the*
> *Synchronicity Engine 7 Technology for any purpose, with exclusive*
> *rights to use that Technology 'for the health & beauty and*
> *consumables market' . . . In addition to the license rights discussed*
> *above, EESystem also is not infringing on Mr. Religa's*
> *Registration because it is not, and for a significant period of time*
> *has not, used the Synchronicity Engine Technology as part of its*
> *separate and distinct EESystem Technology. In fact, the EESystem*
> *software was rewritten in approximately 2003 following the*
> *termination of the business relationship between Mr. Religa and*

18

*Dr. Sandra Rose Michael.*

60.     This letter contains three critically incriminating admissions:

(a) Ownership Recognition: Defendants explicitly disclaimed ownership of the copyrighted technology, affirming Religa's authorship and ownership rights;

(b) License Dependency: They premised their rights solely on the 2001 agreement, which expired by August 2016 (if not earlier due to Sandra's payment defaults and Religa's 2002 rescission); and

(c) False "Rewrite" Claim: Their assertion of a 2003 software "rewrite" directly conflicts with forensic evidence showing effectively identical code overlap with Religa's work, demonstrating their knowledge of ongoing infringement.

61.     Defendants' awareness of their infringement is further evidenced by their litigation strategy. In April 2009, Christopher Kaufmann encountered Sandra at an industry conference where she was demonstrating what she claimed to be EESystem's technology. After researching the background, Kaufmann discovered Religa was the true creator and entered into a licensing agreement with him in January 2011.

62.     In August 2012, Sandra filed a lawsuit against Kaufmann in Arizona for misappropriation of trade secrets, trademark infringement, and defamation. This litigation strategy further reveals a contradictory position in that she tacitly acknowledged Religa's ownership by asserting her purported rights against Kaufmann while publicly claiming to be the technology's inventor.

19

63.     The 18-month legal battle against Kaufmann systematically drained

Religa's financial resources. Bound by indemnification obligations to Kaufmann, Religa

expended approximately $100,000 in legal fees defending against Sandra's baseless claims,

leaving him unable to pursue counterclaims for copyright infringement. This pattern of vexatious

litigation and economic coercion constitutes deliberate obstruction of Religa's enforcement

efforts.

64.     Despite their 2012 written acknowledgment of Religa's ownership, Sandra

has made contradictory public statements. On March 16, 2023, during a promotional event at the

"Rays of Light" center in Port Washington, Long Island, Sandra falsely claimed to attendees:

> *So, in 1996 when I put together my first full system, all of a*
> *sudden, we had, I mean, and realize, this is precisely aligned to a*
> *hundredth of an inch tolerance, with lasers and field engine*
> *generators. There's a tremendous amount of physics to this, a*
> *tremendous amount of science, and we're colliding photons, you*
> *know, quantums of light. We're colliding photons, and it creates a*
> *cold nuclear fusion. So, when we did that, first thing that happened*
> *was all of a sudden, we had the black helicopters over us. We had*
> *spaceships over us. This was in Golden, Colorado. And my*
> *husband, my late husband - he was the former head of technology*
> *for Lockheed Martin. So, he helped me. I'd already developed it.*
> *And so, we brought the first full system forward. And so, NASA*
> *showed up at the door because it was the signature of a nuclear*
> *sub on land... From the Navy - from the Navy satellites, it was a*
> *signature of a nuclear sub exploding on land. And it actually was*
> *explained to me. It looked like it had exploded in Golden,*
> *Colorado. And so, yeah. I now work with the scientists. Realize, I*
> *work with, I mean, my parents were top spook scientists. That's a*
> *term. And I've worked with the top spook scientists in the world,*
> *but the gentleman that was head of that office explained to me*
> *there were 300 men in hazmat suits that surrounded us because I*
> *put the whole country, not just the whole country, our entire*
> *military worldwide went on high defcon alert. Oops.*

65.     This claim of having "put together my first full system" in 1996 is directly

contradicted by both Defendants' own legal correspondence acknowledging Religa's ownership

and by the fact that Religa had already completed the Synchronicity Engine by 1989, years before meeting Sandra.

66.    On March 28, 2013, in a response to an interrogatory in the Kaufmann litigation, Sandra made another contradictory claim, stating:

> Religa, who had never worked in the health and healing field before meeting Dr. Michael, simply wrote the source code for the scrolling program for the Huna 6/Metamatrix technology, but that dysfunctional source code was completely replaced and rewritten in a data-driven format in January 2003. Therefore, Religa's code and scrolling program were never used in any version of the EESystem.

67.    This statement contradicts both Sandra's licensing actions and forensic evidence showing substantial code overlap. The claim that Religa's code was "dysfunctional" is particularly disingenuous given that Sandra actively sought to license this supposedly "dysfunctional" code in 2001.

68.    In November 2023, Religa authorized a letter to Defendants and their vendors asserting his copyright ownership, informing them of their infringement, and demanding they cease and desist from utilizing, selling, and distributing his code. According to former EES security guard Jordan Gaitan, Sandra responded to this effort by instructing her security team to silence Religa "permanently," demonstrating the lengths to which Defendants would go to suppress legitimate copyright claims.

69.    On January 16, 2025, Defendants escalated their tactics by filing a lawsuit in Nevada state court alleging defamation, against Religa and Jason Shurka. They obtained an unusual *ex parte* temporary restraining order purporting to prevent Religa from making truthful statements pertaining to his ownership of his copyrighted code. This legal maneuver mirrors the

strategy employed against Kaufmann in 2012, when they used the same type of legal action and identical claims in Arizona.

70.    Defendants immediately exploited this temporary legal victory, disseminating communications to potential customers claiming vindication and threatening "prompt legal action" against anyone purporting to use Religa's system, which Defendants falsely characterized as "stolen," while it is the opposite that is true.

71.    In May 2025, with said temporary restraining order against Religa in place and before Religa could gather his legal resources to have the order challenged, vacated, or even clarified, Sandra continued her derogatory statements (although seemingly inadvertently acknowledging Religa's authorship), posting on her verified Facebook page that Religa is a "dysfunctional programmer of old software." The phrase "old software" tacitly admitted Religa's creation of the original code. This statement, published to more than 30,000 Facebook followers, represents another instance where Sandra simultaneously disparaged Religa while implicitly acknowledging his role as the technology's creator.

72.    Only a few days ago, Sandra posted a video of herself speaking in public, on her Instagram and Facebook pages on May 20, 2025, (the same day that she learned through court filings in the Nevada case of Religa's intention to file this lawsuit), in which she suddenly claimed for the first time to have "built my first scalar healing light chamber in 1978."

73.    Despite these multiple notices and their own acknowledgment of Religa's authorship and ownership rights, Defendants have not only continued, but expanded their infringing activities, deliberately causing market confusion and demonstrating willful and deliberate copyright infringement.

**F. New York Connections and Business Impact**

22

74.    Defendants have actively targeted and conducted business within New York and specifically this District through various marketing, promotion, and sales activities:

a.  Operating multiple wellness centers within this District featuring the infringing technology;

b.  Conducting demonstrations and promotional events in New York and specifically Long Island, Nassau County;

c.  Establishing business relationships with practitioners and clients in this District; and

d.  Directly selling infringing products and services to New York residents.

75.    Defendants' marketing materials specifically target New York customers, and they have established ongoing business relationships with practitioners located within this District who utilize the infringing technology.

76.    These activities within New York and this District have directly impacted Plaintiffs' business operations in this District, not to mention all around the globe, where Light System has established relationships with clients and practitioners who are now being diverted to Defendants' infringing products.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Copyright Infringement (17 U.S.C. § 501)

77.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

23

78.     Plaintiff Robert Religa is the author and copyright owner of the original source code registered with the United States Copyright Office, Registration Number TX0007381843.

79.     Plaintiff Light System is the exclusive licensee of all rights to commercially exploit the copyrighted materials.

80.     Defendants have infringed Plaintiffs' copyright by:

a.  Reproducing the protected source code without authorization;

b.  Distributing products containing the protected source code without authorization;

c.  Publicly displaying the protected source code without authorization; and

d.  Preparing derivative works based upon the copyrighted material without authorization.

81.     Defendants' infringement of Plaintiffs' copyright has been continuous willful, and exponentially scaled, with (1) 700+ new infringing systems deployed since 2022; revenue growth from $21,000 in 2021 to $23 million in 2022, $44 million in 2023 and another $19.5 million in 2024; and (c) ongoing sales of unauthorized systems as of May 2025, in disregard of and with indifference to Plaintiffs' rights.

82.     As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered and will continue to suffer substantial, immediate, and irreparable injury for which there is no adequate remedy at law.

83.     Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringement of their copyright, and to recover actual or statutory damages, along with attorneys' fees and costs, pursuant to 17 U.S.C. §§ 502-505.

84.

## SECOND CAUSE OF ACTION
### Contributory Copyright Infringement

84.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

85.    Defendants have knowledge of the infringing activity described above, as evidenced by their receipt of multiple cease and desist notices from Plaintiffs.

86.    Despite this knowledge, Defendants have intentionally induced, caused, or materially contributed to the unauthorized reproduction, distribution, public display, and creation of derivative works of Plaintiffs' copyrighted materials.

87.    As a direct and proximate result of Defendants' contributory infringement, Plaintiffs have suffered and will continue to suffer substantial, immediate, and irreparable injury for which there is no adequate remedy at law.

## THIRD CAUSE OF ACTION
### Violation of Digital Millennium Copyright Act (17 U.S.C. § 1202)

88.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

89.    Mr. Religa embedded copyright management information within the Synchronicity Engine's source code, including (a) digital watermarking in the MetaMatrix font; (b) 'Created by Robert Religa' tags in comment fields; and (c) cryptographic hashes verifying code authenticity.

90.    Upon information and belief, Defendants have intentionally removed and/or altered this copyright management information, and have distributed works containing the copyrighted material knowing that the copyright management information has been removed or altered.

25

91.   Defendants engaged in these activities knowing, or having reasonable grounds to know, that their actions would induce, enable, facilitate, or conceal copyright infringement.

92.   Defendants' actions constitute violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## FOURTH CAUSE OF ACTION
### Unfair Competition (Lanham Act)

93.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

94.   Defendants have engaged in unfair competition by misappropriating Plaintiffs' copyrighted materials and the product of their significant investment of time, effort, and expense.

95.   Defendants have used Plaintiffs' intellectual property to unfairly compete with Plaintiffs in the marketplace by marketing and selling products that incorporate Plaintiffs' protected materials without authorization or compensation.

96.   Defendants' conduct has caused confusion in the marketplace as to the source of the technological systems and has allowed Defendants to unfairly benefit from Plaintiffs' goodwill and reputation.

97.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered and will continue to suffer substantial, immediate, and irreparable injury for which there is no adequate remedy at law.

### FIFTH CAUSE OF ACTION
**Tortious Interference with Contract**

98.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

99.     Defendants have knowingly and intentionally interfered with Light System's exclusive license rights by: (a) Threatening vendor partners and customers of Light System and its Affiliates with litigation; and (b) Making false statements about Plaintiffs' ownership rights to dissuade potential customers.

### SIXTH CAUSE OF ACTION
**As to Robert Religa: Defamation (Libel/Slander *Per Se*)**

100.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

101.     Defamatory Statements: Defendants, through Sandra Rose Michael, repeatedly made false and defamatory statements about Plaintiff Robert Religa, including but not limited to: (a) Publicly labeling Religa as a "dysfunctional programmer of old software" (May 16, 2025 Facebook post to 30,000+ followers); (b) Falsely accusing Religa of drunkenness and incompetence in professional settings; (c) Falsely asserting Light System's authorized technology is "stolen" (2023–2025 communications to customers).

102.     Publication: These statements were published to third parties, including: (a) Social media platforms (Facebook); (b) Direct communications with prospective clients (e.g., threats to Light System partners); (c) Public marketing events (March 16, 2023 Port Washington presentation).

103.     Falsity: Each statement is demonstrably false. Religa's code remains operational in Defendants' systems (per forensic analysis showing an identical overlap), and

27

Light System holds exclusive rights to the technology. Sandra's claims of authorship contradict her 2012 legal admission of Religa's ownership.

104.     Actual Malice: Defendants acted with knowledge of falsity or reckless disregard for the truth, as evidenced by: (a) Sandra's 2012 written acknowledgment of Religa's copyright ownership; (b) Forensic proof of code overlap disproving "rewrite" claims; (c) Continued public denials of Religa's authorship despite internal knowledge of infringement.

105.     Defamation Per Se: The statements qualify as defamation per se under New York law because: (a) Accusations of "dysfunctional" programming directly injure Religa's reputation as a software developer, and (b) Harm business interests.

## VI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A. For a restraining order, preliminary injunction, and permanent injunction prohibiting Defendants, their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in concert or participation with them, from:

(1) Infringing Plaintiffs' copyright in any manner;

(2) Manufacturing, distributing, selling, offering for sale, marketing, or promoting any products or services that contain or use Plaintiffs' copyrighted materials; and

(3) Destroying, concealing, altering, or otherwise disposing of any evidence relating to Plaintiffs' claims, including but not limited to all copies of the infringing materials and all documents relating to the development, marketing, and sale of the infringing products;

B. For an award of:

(1) Plaintiffs' actual damages and Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b); or

(2) Statutory damages per work infringed, pursuant to 17 U.S.C. § 504(c), enhanced under 17 U.S.C. § 504(c)(2) for willful infringement;

C. For an award of Plaintiffs' full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

D. For prejudgment and post-judgment interest on all monetary awards; and

E. For such other and further relief as the Court deems just and proper.

Dated:    Queens, New York          Respectfully Submitted,
          May 22, 2025

George C. Grasso, Esq.
GCGrasso Law, PLLC
Attorney for Plaintiffs
123-60 83rd Ave. Ste. 2R
Kew Gardens, NY 11415
Tel. (718) 308-7947 / (718) 819-8696
Fax. (332) 264-7920

**EXHIBIT 1**

# Copyright
United States Copyright Office

Try the **Copyright Public Records System (CPRS)** pilot with enhanced
search features and filters.

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Title = synchronicity engine 1996
Search Results: Displaying 1 of 1 entries



Labeled View

### *Synchronicity Engine 1996.*

**Type of Work:** Computer File
**Registration Number / Date:** TX0007381843 / 2011-03-27
**Application Title:** Synchronicity Engine 1996.
**Title:** Synchronicity Engine 1996.
**Description:** Electronic Deposit.
**Copyright Claimant:** Robert John Religa, 1951- d.b.a. Jedi Technologies. Address: 1048 Irvine Ave, 201, Newport Beach, CA, 92660, United States.
**Date of Creation:** 1996
**Date of Publication:** 1996-05-01
**Nation of First Publication:** United States
**Authorship on Application:** Robert John Religa, 1951- d.b.a. Jedi Technologies; Domicile: United States; Citizenship: United States. Authorship: text, computer program.
**Rights and Permissions:** Robert John Religa, Jedi Technologies, 1048 Irvine Ave, 201, Newport Beach, CA, 92660, United States, (415) 644-0099, (415) 531-3392, rjreliga@gmail.com
**Names:** Religa, Robert John, 1951-
Jedi Technologies



| Save, Print and Email (Help Page) |
| Select Download Format Full Record ▼ | Format for Print/Save |
| Enter your email address: | Email |

Help   Search   History   Titles   Start Over